[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 13, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-15338
Non-Argument Calendar

_____

D. C. Docket No. 06-00314-CR-T-30-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY JEROME HENRY,
EDWARD DELL,
TOMIKI JENKINS,
HELENA JONES,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(January 13, 2009)**

Before ANDERSON, CARNES and FAY, Circuit Judges.

PER CURIAM:

Tony Henry appeals his convictions for conspiracy to possess with intent to distribute and to distribute crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), possession with intent to distribute a quantity of cocaine base, in violation of § 841(a)(1) and (b)(1)(C), distribution of crack cocaine, in violation of § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2, and knowingly opening, using, and maintaining a place for the purpose of manufacturing and distributing cocaine base, in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2.

Tomiki Jenkins appeals his convictions and sentence for conspiracy to possess with intent to distribute cocaine, in violation of § 846, distribution of crack cocaine, in violation of § 841(a) and 18 U.S.C. § 2, and knowingly opening, using, and maintaining a place for the purpose of manufacturing and distributing cocaine base, in violation of § 856 and 18 U.S.C. § 2.

Helena Jones appeals her convictions and sentence for conspiracy to possess with intent to distribute cocaine, in violation of § 846, and knowingly opening, using, and maintaining a place for the purpose of manufacturing and distributing cocaine base, in violation of § 856(a)(1) and 18 U.S.C. § 2.

Edward Dell appeals his sentence for conspiracy to possess with intent to distribute crack cocaine, in violation of § 846, possession with intent to distribute

crack cocaine, in violation of § 841(a)(1), (b)(1)(C), distribution of crack cocaine, in violation of § 841(a)(1), (b)(1)(B), and knowingly opening, using, and maintaining a place for the purpose of manufacturing and distributing cocaine base, in violation of § 856.

The four codefendants are accused of selling crack cocaine out of two residences, the "Dahlia" residence, and, later, after the Dahlia residence was closed, "the Pit." The Pit initially was purchased by Henry, who directed the operations and supplied the crack cocaine until his arrest. After Henry was arrested, Jones, his wife, operated the Pit until her own arrest.

## I. Henry

Henry raises two issues on appeal: (1) the district court abused its discretion by disqualifying one of his attorneys; and (2) the district court abused its discretion by excluding photocopies of forms from casinos, retained by his "tax preparer," which reflected his gambling winnings, and refusing to permit his tax preparer to testify regarding the amount of money recorded on the excluded forms. Henry also has filed a motion to supplement his reply brief.

### A. Attorney Disqualification

Before the Defendants' case went to trial, Dell's counsel filed a motion for a continuance and a hearing in order to resolve a possible conflict of interest issue.

3

Dell's counsel had learned from his client that one of Henry's attorney's, Ty Trayner, had represented Dell during the prosecution of state charges against him related to actions for which he and Henry were charged in the third count of the instant indictment. Finding that Trayner had an "intractable conflict of interest," the district court disqualified him, after particularly noting that: (1) Dell had considered acting as a government witness and might still have chosen to do so; and (2) Dell might have chosen to testify in his own defense.

On appeal, Henry argues that the district court denied him his Sixth Amendment right to his choice of counsel. He specifically notes that no evidence was taken at the hearing where Trayner was disqualified, and the government never filed a motion or response, only orally joining Dell's motion. Henry argues that the district court never inquired into the "essential issue" of whether any confidential information was shared by Dell and Trayner. He stresses that he was willing to waive any conflict of interest, even if it would have prevented his counsel from cross-examining Dell at trial. He also argues that the court disqualified Trayner on the "remote chance" that a conflict would arise.

While we have recognized a defendant's presumptive right under the Sixth Amendment to counsel of his choice, we have held that this right is not absolute, but is qualified by the judiciary's "independent interest in ensuring that the

4

integrity of the judicial system is preserved and that trials are conducted within ethical standards." United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994). Accordingly, we have held that in light of the limited nature of a defendant's right to choose his own counsel, the trial court's refusal to hear the defendant through his chosen counsel is reviewed for an abuse of discretion. Id. at 22.

We have held that an attorney's actual or potential conflict of interest overcomes the presumption in favor of a defendant's counsel of choice and warrants disqualification. Ross, 33 F.3d at 1523 (11th Cir. 1994); see United States v. Almeida, 341 F.3d 1318, 1323 (11th Cir. 2003) (holding that "the Sixth Amendment right to have the effective assistance of counsel encompasses the right to have counsel untainted by conflicts of interest"). "In deciding whether the actual or potential conflict warrants disqualification, we examine whether the subject matter of the first representation is substantially related to that of the second," in order to determine whether the potential defense counsel has "divided loyalties that prevent him from effectively representing the defendant." Ross, 33 F.3d at 1523. "If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate." Id. When a witness at trial was defended by an attorney representing the defendant against charges related to an identical crime, the attorney has an

"actual" conflict of interest. United States v. Campbell, 491 F.3d 1306, 1311 (11th Cir. 2007).

"The rule of law in this circuit is (and will continue to be) that once the former client . . . proves that the subject matters of the present and prior representations are 'substantially related,' the court will irrebutably presume that relevant confidential information was disclosed during the former period of representation." Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (quotations omitted). Although a client may knowingly, intelligently, and voluntarily waive his right to conflict-free representation, the court may refuse to accept the waiver where necessary to "ensure the adequacy of representation, to the protect the integrity of the court, and to preserve trial judge's interest to be free from future attacks over adequacy of waiver and fairness of trial." Almeida, 341 F.3d at 1323 (internal quotations and citation omitted).

> Where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver. . . . [I]n the murkier pretrial context when relationships between parties are seen through a glass, darkly . . . [t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials[.] . . . [Thus,] the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

6

Wheat v. United States, 486 U.S. 153, 162-63, 108 S.Ct. 1692, 1698-99, 100

L.Ed.2d 140 (1988).

Because one of Henry's attorneys had several potential conflicts of interest

relating to his representation of both Henry and a codefendant, and Henry was able

to receive his choice of representation with respect to one of his attorneys, the

district court did not abuse its discretion by disqualifying his attorney.

B. Exclusion of Evidence and Testimony

At trial, Henry called his mother, Karen Simmons, to the stand, and she

testified that she was Henry's "tax preparer." Henry sought to introduce into

evidence, through Simmons, documents that she stated were photocopies of "W-

2G" forms received from casinos reflecting Henry's gambling winnings for several

years. She stated that they were used to prepare Henry's income tax returns. The

district court found that they were hearsay and not covered by the "business

records" exception, as argued by Henry. Henry then questioned Simmons

regarding whether she knew, from preparing Henry's tax returns, what amounts of

money had been recorded on the forms. The court found that, to the extent that

Henry was asking Simmons about his tax returns, her testimony would be

excluded by the best evidence rule. The court also refused to allow Henry to use

7

the excluded forms to refresh Simmons's recollection regarding the amount of Henry's gambling winnings.

Henry argues that the district court erred by excluding Simmons's photocopies of the W-2G forms provided by casinos regarding his gambling earnings, because they were admissible as business records. Acknowledging that Simmons did not prepare the forms herself, he stresses that Simmons kept the forms in her capacity as a licensed tax-preparer. He contends, further, that the court denied him a chance to provide proof of a legitimate source of income from his gambling winnings by refusing to allow Simmons to testify regarding her recollections of Henry's gambling winnings as his tax-preparer, or to allow him to use the inadmissable forms to refresh her recollection regarding Henry's winnings.

Determinations of the admissibility of evidence are within the discretion of the trial judge, and we will not reverse unless we find an abuse of discretion. United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002). We will reverse an erroneous evidentiary ruling, however, "only if the resulting error was not harmless." United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999), corrected by 194 F.3d 1186 (11th Cir. 1999); see also Fed.R.Crim.P. 52(a) (noting that errors that do not affect substantial rights must be disregarded). An error is harmless unless "there is a reasonable likelihood that [it] affected the defendant's

8

substantial rights." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990).

The business records exception to the hearsay rule provides that a record "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . ., all as shown by the testimony of the custodian or other qualified witness," is admissible unless the circumstances indicate a lack of trustworthiness. See Fed.R.Evid. 803(6). The trustworthiness prong is not met when the party authenticating the records can provide no testimony regarding "the origination and compilation of the documents" or "about the initial link in the chain producing the record." United States v. Petrie, 302 F.3d 1280, 1288 (11th Cir. 2002). The best evidence rule, in Federal Rule of Evidence 1002, provides that:

> [T]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in [the Federal Rules of Evidence]. The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing. However, where the original of a [document] has been lost or destroyed, the original is not required and other evidence of its content is admissible, unless the proponent lost or destroyed the original in bad faith.

United States v. Ross, 33 F.3d 1507, 1513-14 (11th Cir. 1994) (citations and quotations omitted). Federal Rule of Evidence 612 provides that a witness may

9

use a writing to refresh her memory for the purpose of testifying. Fed.R.Evid. 612.

The district court properly excluded documents and testimony from evidence because: (1) the forms that Henry's witness presented were hearsay and were not business records under the hearsay exception; and (2) the witness' testimony regarding her memories of Henry's tax returns was barred by the best evidence rule. Accordingly, we affirm.

## II. Dell

On appeal, Dell argues that the district court erred by failing to "both determine the scope of [his] criminal activity . . . and to specify the amount of crack cocaine attributable to . . . Dell in the entire case." Dell argues that the evidence indicates that the "scope" of his criminal activity was limited to the drug transactions taking place in February, September, and October 2005, which totaled 46.39 grams of crack cocaine. He stresses that, with respect to other controlled buys, his name was not mentioned, and the confidential sources ("CS") did not indicate that he was involved. Dell argues that because the parties who testified to his involvement gave inconsistent testimony, no "credible evidence" supports the inference that he was more involved in the conspiracy.

We review a district court's determination of the amount of drugs for which a defendant is held accountable at sentencing for clear error. United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995). "When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005).

"For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993).

> [T]o determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant. Once the extent of a defendant's participation in the conspiracy is established, the court can determine the drug quantities reasonably foreseeable in connection with that level of participation. If the court does not make individualized findings, the sentence may nevertheless be upheld if the record supports the amount of drugs attributed to a defendant.

Id. (citations omitted). The district court must take into account all "relevant conduct" when determining the quantity of drugs attributable to the defendant, i.e. "all acts and omissions committed, aided, abetted, counseled, commanded,

11

induced, procured, or willfully caused by the defendant[.]" U.S.S.G. § 1B1.3(a)(1)(A). If the case involves drugs, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment. (n.2); U.S.S.G. § 1B1.3(a)(1)(B). Because "the [g]uidelines require a district court to attribute to a defendant all drugs foreseeably distributed pursuant to a common scheme or plan of which that defendant's offense of conviction was a part," a defendant may be held accountable for drugs that were not related specifically to his counts of conviction and for actions taken by others. States v. Mertilus, 111 F.3d 870, 873 (11th Cir. 1997) (quotations and citation omitted).

Because the government presented sufficient evidence to show the quantity of crack cocaine attributed to the conspiracy and that Dell was extensively involved in the conspiracy to distribute the entire quantity of crack cocaine, we hold that the district court did not clearly err holding him accountable for 1.5 kilograms of crack cocaine. Accordingly, we affirm.

### III. Jenkins

Jenkins raises two issues on appeal: (1) the district court erred in determining that the government had presented sufficient evidence to support his conviction for distributing crack cocaine on October 3, 2005, which was Count 6 of the indictment; and (2) the district court erred by holding that it did not have the authority to consider the cocaine base versus powder cocaine disparity at sentencing.

## A. Sufficiency of the Evidence

Relying on United States v. Hamblin, 911 F.2d 551 (11th Cir. 1990), Jenkins argues that the government presented insufficient evidence to prove him guilty beyond a reasonable doubt of Count 6. He argues that the government presented no evidence that he knew that Dell was delivering cocaine to Henry on October 3, 2005, because it merely presented CS Myron Drayton's testimony of the following sequence of events: (1) Drayton met with Henry at the Pit, where they discussed a crack purchase; (2) Henry then met with Dell alone; (3) Dell and Jenkins left the Pit and returned; (4) Dell met again with Henry; and (5) Henry delivered crack cocaine to Drayton. Jenkins argues that the evidence shows that Dell left the Pit to obtain cocaine that Henry supplied to Drayton, but not that Jenkins knew that Dell intended to do so.

13

We review de novo a district court's denial of a properly preserved motion for a judgment of acquittal based on the sufficiency of the evidence. United States v. Byrd, 403 F.3d 1278, 1288 (11th Cir. 2005). We "view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices drawn in the government's favor." Id. "'A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence.'" Id. (quoting United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999)).

To sustain the conviction under § 841, the government must have proven, either by direct or circumstantial evidence, that Jenkins knowingly distributed five grams or more of crack cocaine. See United States v. Poole, 878 F.2d 1389, 1391-92 (11th Cir. 1989); 21 U.S.C. § 841(a)(1). Section 2 "provides that anyone who 'aids, abets, counsels, commands, induces or procures' the commission of an offense against the United States is punishable as a principal for the offense." Hamblin, 911 F.2d at 551. "To prove aiding and abetting, the government must demonstrate that a substantive offense was committed, that the defendant associated himself with the criminal venture, and that he committed some act which furthered the crime," and "the government must show that the defendant shared the same unlawful intent as the actual perpetrator." Id.

14

In Hamblin, we reversed a defendant's conviction for aiding and abetting under 18 U.S.C. § 924(c) when the government failed to present evidence that the defendant knew that his codefendant was planning on bringing a weapon to a bank robbery. Hamblin, 911 F.2d at 551. With respect to a later robbery, however, we found that the jury reasonably could find that, based on the defendant's knowledge of the use of the firearm in the original robbery, he knew his codefendant would use a firearm during the later robbery. Id.

Because Jenkins was involved in his codefendants' cocaine base distribution business for years before October 3, 2005, and had participated in a practically identical sale of crack cocaine before, the jury could infer that Jenkins knew that his codefendants were distributing crack cocaine when he participated in the delivery on October 3, 2005. Accordingly, we affirm as to this issue.

### B. Crack and Powder Cocaine Disparity

Jenkins argues that, under Kimbrough v. United States, 552 U.S. __, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the district court erred by finding, at his sentencing hearing, that it was unable to consider the disparity between the guideline sentences for crack versus powder cocaine when sentencing him.

We review the final sentence imposed by the district court for reasonableness. United States v. Winingear, 422 F.3d 1241, 1245 (11th Cir.

15

2005). In reviewing a sentence, we are required to "evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in [18 U.S.C.] § 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). In Kimbrough, the Supreme Court stated that, when sentencing a party, "[t]he [district court] may determine . . . that . . . a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." 552 U.S. at __, 128 S. Ct. at 564. The Supreme Court further held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." Id. at __, 128 S.Ct. at 576.

We since have held that remand of a case for limited re-sentencing, "to permit the district court to reconsider the § 3553(a) factors in light of the Supreme Court's holding in Kimbrough," is necessary when the district court failed to consider the disparity between the guideline sentences for crack versus powder cocaine because it "concluded that it lacked authority to consider the crack/powder sentencing disparity in reaching an appropriate sentence." United States v. Stratton, 519 F.3d 1305, 1306-07 (11th Cir. 2008).

16

Because the district court ruled that it was unable to consider the sentencing disparities between crack and powder cocaine cases when imposing sentence on Jenkins based on our precedent that since has been overruled, we vacate and remand Jenkins's case to the district court for limited re-sentencing.

## IV. Jones

Jones raises two issues on appeal: (1) the district court erred in determining that the government had presented sufficient evidence to sustain her conviction for maintaining a place for the purpose of manufacturing and distributing cocaine; and (2) the district court erred by holding that it did not have the authority to consider the cocaine base versus powder cocaine disparity at sentencing.

### A. Sufficiency of the Evidence

On appeal, Jones argues that the government failed to present sufficient evidence to show that she "maintain[ed]" the residence at 5606 86th Street, because it failed to show that she exercised "any significant control" over the site, had a "role in the acquisition of the site, rented or furnished the site, repaired the site, or supplied food to those at the site."

To support a conviction for maintaining a place for the purpose of manufacturing and distributing crack cocaine, the government had to prove that Jones knowingly operated or maintained a place for the purpose of manufacturing

17

crack cocaine.  See United States v. Clavis, 956 F.2d 1079, 1090 (11th Cir. 1992), modified in part on other grounds, 977 F.2d 538  (11th Cir. 1992); 21 U.S.C. § 856(a)(1).  Distribution alone is not enough to establish purposeful maintenance of a place, but "[a]cts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity are, of course, evidence of knowingly maintaining the place."  Clavis, 956 F.2d at 1091.

Because the government offered testimony that Jones helped direct and "supervise" the crack cocaine distribution before Henry's arrest and supervised the Pit "employees," in order to continue the distribution operation, after Henry's arrest, the government presented sufficient evidence to show that Jones "maintained" the Pit for the purpose of manufacturing and distributing crack cocaine.  Accordingly, we affirm as to this issue.

## B.  Crack and Powder Cocaine Disparity

Jones argues that, under Kimbrough, the district court erred by failing to consider the disparity between the guideline sentences for crack cocaine and powder cocaine.  Jones states that she "raised her Kimbrough claim in the district court [and] the district court . . . rejected [her] request to consider the . . . disparity."

Because Jones raised the issue in her sentencing memorandum, the district court failed to address it at sentencing, and the district court ruled that it was unable to consider the sentencing disparities between crack and powder cocaine cases, when imposing sentence on Jenkins, we vacate and remand Jones's case to the district court for limited re-sentencing.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**[1]

---

[1] Henry's motion to supplement his reply brief is denied and his and Dell's requests for oral argument are denied.