[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11534
Non-Argument Calendar
_____

D.C. Docket Nos. 1:11-cv-23548-JLK; 1:07-cr-21003-JLK-2


JORGE LUIS ARANGUREN-SUAREZ,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 7, 2014)

Before HULL, JORDAN and FAY, Circuit Judges.

PER CURIAM:

Jorge Luis Aranguren-Suarez, a federal prisoner proceeding pro se, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his 151-month sentence. We granted a certificate of appealability as to whether Aranguren-Suarez's trial attorney rendered ineffective assistance by not filing a pre-trial motion to suppress statements Aranguren-Suarez made at the time of his arrest, but before the Miranda warning.[1] The district court denied relief because, even assuming trial counsel's performance was deficient, the record demonstrated that Aranguren-Suarez had not suffered any prejudice. After review, we affirm for several reasons, including that the challenged statements were never admitted at trial.

## I.  BACKGROUND FACTS

### A.    Arrest and Statements to Agent Diaz

In November 2007, federal agents at Miami International Airport uncovered and began investigating an operation to smuggle cocaine from Peru into the United States by hiding it inside wooden wall clocks. When two individuals carrying some of the clocks inside their luggage were arrested, they told the agents they were to deliver the clocks to Gavi Tapia at A&J Tours, a travel agency. The agents conducted a controlled delivery of the clocks to A&J Tours, found additional cocaine-filled clocks on the premises, and arrested Tapia. A&J Tours invoices

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1062 (1966).

2

showed that the intended recipient for multiple clock shipments was Else Hernandez.

Tapia agreed to cooperate and arranged for Elsa Hernandez to pick up the clocks when undercover agents were present. Hernandez arrived at A&J Tours with Aranguren-Suarez, who waited in the car while Hernandez entered the store to retrieve the clocks. When Hernandez became nervous, she called Aranguren-Suarez on her cell phone and attempted to leave the store, but was arrested.

Meanwhile, Aranguren-Suarez left his car and began to walk away from the store. Agent Alejandro Diaz approached Aranguren-Suarez, handcuffed him, and asked him where he was going. Aranguren-Suarez replied, stating: first that he was going to work, then that he was going for a walk, and finally that he was going to meet a friend. These are the challenged statements.

## B.    Criminal Trial Proceedings

Aranguren-Suarez was indicted on one count of conspiracy with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Aranguren-Suarez's attorney did not file a pre-trial motion to suppress Aranguren-Suarez's above statements to Agent Diaz.

In its opening statement at trial, the government stated that Aranguren-Suarez gave Agent Diaz three stories of what he was doing "in the area," as follows:

> The defendant gives her the $300, which is the cost of the package . . . and offers her $500 for her efforts to go in, get me my package, bring it back to me, I'll be in the parking lot.  But, as I mentioned earlier, Elsa Hernandez never came out.  She was arrested.  And the defendant sensed something was wrong because where is Ms. Hernandez, what does he do?  What does he do?  He tries to flee.  He abandoned his Lincoln Navigator in the parking lot, and he begins to cross a major two-lane highway.  Agents stop him on the median of the highway.  Can he tell them where he's going?  No.  Can he tell them what he's doing in the area?  No.  He gives them three different stories of what he is doing.

Defense counsel did not object to this statement, but when the government called Agent Diaz to testify, defense counsel objected before any questioning began.

Outside the jury's presence, defense counsel stated that the government intended to ask questions about statements Aranguren-Suarez made after he was detained, but before he was given his Miranda warning.  Counsel stated that "[t]hese are matters that I've routinely worked out informally with prosecutors in the past without the necessity of filing a motion to suppress, and I didn't think that this would be part of this trial."  After confirming with the prosecutor that Agent Diaz would testify about Aranguren-Suarez's statements made before the Miranda warning, the district court sustained the objection.

4

Agent Diaz testified that after Elsa Hernandez was arrested, Agent Diaz observed Aranguren-Suarez walking away from A&J Tours and across a street while talking on a cell phone. He and another officer approached Aranguren-Suarez, handcuffed him, and asked him where he was going. Agent Diaz did not testify about Aranguren-Suarez's response and no further mention was made of them during the trial.

At trial, the government called several agents about the drug smuggling operation and the arrest of Aranguren-Suarez. The government also called Elsa Hernandez, who testified Aranguren-Suarez was involved in the drug smuggling.

During the jury charge, the district court instructed the jury, among other things, that it "must consider only the evidence that [the court] admitted into the record," and that "[w]hat the lawyers say in closing argument is not binding on you in any way nor, indeed, anything that [the court] may have said."

The jury found Aranguren-Suarez guilty on both counts, and he was sentenced to 151 months' imprisonment on each count, to be served concurrently. On direct appeal, this Court affirmed Aranguren-Suarez's convictions and sentences. See United States v. Aranguren-Suarez, 346 F. App'x 557, 559-60 (11th Cir. 2009) (unpublished) (concluding, inter alia, that Aranguren-Suarez's convictions were supported by sufficient evidence).

## II. DISCUSSION

To establish ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Because the defendant must prove both prongs, we are not required to consider the two prongs in any particular order and need not address the performance prong if the prejudice prong cannot be satisfied. Dell v. United States, 710 F.3d 1267, 1273-74 (11th Cir. 2013), cert. denied, 134 S. Ct. 1508 (2014). In determining whether counsel's performance was deficient, the proper measure is reasonableness under prevailing professional norms, and judicial scrutiny of counsel's performance is highly deferential. Strickland, 466 U.S. at 688-689, 104 S. Ct. at 2065.

To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. 2068. For guilt-phase ineffective assistance claims, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S. Ct. at 2069. Thus, to make the prejudice determination, we "must consider the totality of the evidence before the . . . jury." Id. "[A] verdict or conclusion only weakly supported by the record is more likely

6

to have been affected by errors than one with overwhelming record support." Id. at 696, 104 S. Ct. at 2069.

At the outset, we note that although Aranguren-Suarez's trial counsel did not file a pre-trial motion to suppress evidence of Aranguren-Suarez's pre-arrest comments to Agent Diaz, trial counsel successfully objected to this evidence during trial. Thus, this is not a case in which evidence that should have been excluded was admitted. Instead, Aranguren-Suarez argues that he was prejudiced by his trial counsel's failure because a pre-trial motion to suppress would have prevented the prosecutor from referring to Aranguren-Suarez's comments to Agent Diaz in his opening statement.

The prejudicial effect of an attorney's improper remarks, however, is evaluated in context, not in isolation. Johnson v. Alabama, 256 F.3d 1156, 1184 (11th Cir. 2001). Further, because a jury is presumed to follow instructions, any prejudice from an attorney's improper remarks may be cured by proper jury instructions. Id.

Here, even assuming arguendo that Aranguren-Suarez showed his trial counsel's performance was deficient, he did not show a reasonable probability that, but for his trial counsel's failure to file the motion to suppress, the outcome of his trial would have been different. The jury heard evidence of the law enforcement investigation that tracked several cocaine shipments through Miami International

Airport to A&J Tours for delivery to Elsa Hernandez.  Elsa Hernandez testified that she went to A&J Tours to pick up two shipments, that the shipments were actually for Aranguren-Suarez, who paid her to pick them up for him.  Elsa Hernandez further explained that Aranguren-Suarez accompanied her to A&J Tours on the day of their arrests and that she called him just prior to her arrest once the pickup began to look suspicious.  Agent Diaz testified that, just after Elsa Hernandez was arrested, he approached Aranguren-Suarez as he was walking away from A&J Tours and talking on a cell phone.  The jury also was shown a copy of Aranguren-Suarez's prior conviction for possession with intent to distribute cocaine and was properly instructed that it could use that conviction to determine whether Aranguren-Suarez was involved in the drug transaction at A&J Tours intentionally or by mistake or accident.

Given that there was ample evidence from which the jury could conclude that Aranguren-Suarez drove Hernandez to A&J Tours so she could pick up a cocaine shipment for him, it is highly unlikely that the prosecutor's sole reference, during opening statements, to Aranguren-Suarez offering Agent Diaz three different reasons for being in the area had any effect on the jury's verdict. Furthermore, the trial court instructed the jury to consider only the evidence admitted into the record and not to rely on arguments by counsel, and the jury is

8

presumed to have followed those instructions.  Accordingly, Aranguren-Suarez has not shown prejudice under Strickland.

For these reasons, we affirm the district court's denial of Aranguren-Suarez's § 2255 motion.

**AFFIRMED.**